**Julius STRUPP, Plaintiff,**

v.

**Christian A. HERTER, Secretary of State, Defendant.**

United States District Court
S. D. New York.
Jan. 28, 1960.

Regosin & Edwards, New York City, for plaintiff, Mark H. Berger, New York City, of counsel.

S. Hazard Gillespie, Jr., U. S. Atty., for S. D. of New York, New York City, for defendant, Charles J. Hartenstine, Jr., Special Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

This is an action for a judgment declaring plaintiff to be a national of the United States brought pursuant to the authority conferred by section 360(a) of the Immigration and Nationality Act, 66 Stat. 163, 8 U.S.C. § 1503(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Plaintiff is a bachelor, born in Germany June 13, 1882, who entered the United States for permanent residence in 1914. He immediately became engaged in the private banking business in New York and, starting in 1915, became expert in the economic affairs of South America. Thereafter he spent much time in South America on business. He was naturalized as a citizen of the United States by order of this court on November 26, 1928.

On September 21, 1954 the American Vice Consul at Buenos Aires executed a certificate of plaintiff's loss of United States nationality under Section 352(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1484(a) (2), and the certificate was approved by the State Department on October 27, 1954.

The ground for the issuance of the certificate of loss of nationality as therein stated was that plaintiff had expatriated himself under the provisions of

section 352(a)(2) of the Immigration and Nationality Act of 1952 by having a continuous residence for five years in foreign states—Argentina and Uruguay. The effective date of loss of nationality was December 24, 1952 as stated in the certificate. That was the effective date of the Immigration and Nationality Act.

Section 352(a)(2) provides:

"Loss of Nationality by Naturalized National.

"Sec. 352(a) A person who has become a national by naturalization shall lose his nationality by— * * *

"(2) having a continuous residence for five years in any other foreign state or states, except as provided in sections 353 and 354 of this title, whether such residence commenced before or after the effective date of this Act."

█ The Government has the burden of proving that plaintiff "resided" in a foreign state or states for five years and that such residence was "continuous". See Nishikawa v. Dulles, 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659; Perez v. Brownell, 356 U.S. 44, 47, footnote 2, 78 S.Ct. 568, 2 L.Ed.2d 603.

For the five years prior to December 24, 1952 plaintiff had spent all but eleven months and twenty-two days in Argentina and Uruguay. The periods of his presence in the United States and aboard were as follows:

| United States | Abroad |
| --- | --- |
| January 19, 1949—April 17, 1949 | December 1947—January 19, 1949 |
| January 5, 1951—March 11, 1951 | April 17, 1949—January 5, 1951 |
| June 4, 1952—December 20, 1952 | March 11, 1951—June 4, 952 |
| | December 20, 1952—December 24, 1952 |

———◆———

Section 101(a)(33) of the Immigration and Nationality Act of 1952, 8 U.S. C. § 1101(a)(33) defines "residence" and "continuous" as follows:

"The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent. Residence shall be considered continuous for the purposes of sections 350 and 352 of Title III where there is a continuity of stay but not necessarily an uninterrupted physical presence in a foreign state or states or outside the United States."

█ The determination of the "residence" of a person "without regard to intent" is difficult for courts whose thinking is conditioned by emphasis laid on the factor of the intent of the person when courts seek to determine his residence as that term is generally understood in the law. If a man had one house in New York and another in Argentina we might be helped in determining which was "his principal, actual dwelling place in fact" by the fact that the one in New York was a Fifth Avenue mansion and the one in Argentina was a frame cottage on the river bank. Here, however, plaintiff had no house either in the United States or abroad. It is true that when in New York he stayed only at hotels but the Government has been able to show in Argentina or Uruguay where he spent most of the five year period before the date as of which he was denaturalized nothing in the way of a permanent habitation. For some of the time he lived at the Hotel Continental in Buenos Aires, paying day rates. He also stayed at the house of a friend in the country. When in Uru-

guay he stayed for some time at a house on which he held a mortgage. While there is thus little to choose between the United States and South America so far as the nature of plaintiff's roots in the land are concerned, I cannot shut my eyes to the fact that he spent more than four-fifths of his time in South America. Everyone of us every day has a dwelling place in fact and, while plaintiff seems to have had no settled one, as between the United States and foreign states his "principal" dwelling places in the last five years before his denaturalization were in foreign states. Certainly therefore he "resided" in foreign states during that period and the crucial question is whether his residence was "continuous".

■ It will be remembered that, under section 101(a) (33), "[r]esidence shall be considered continuous for the purposes of sections 350 and 352 * * * where there is a continuity of stay but not necessarily an uninterrupted physical presence in a foreign state or states". Here again the burden is upon the Government to show that, where plaintiff's residence was interrupted by three periods of presence in the United States aggregating almost a year, there was a "continuity of stay" for five years within the meaning of the statute.

Here the question arises whether or not the person's intent is a factor in determining whether there was a continuity of stay even though intent is ruled out as a factor in determining what his residence was. Since my decision would be the same on each hypothesis, that question need not be decided.

■ If the element of intent is left out, the Government has certainly not sustained its burden of showing that there was continuity of stay during the five-year residence. Plaintiff returned to the United States three times in the five-year period: for about 3½ months in the second year, for about 2 months in the fourth year, and for about 6 months in the fifth year.

If the element of intent is a factor, it seems just as clear that the Government has not shown that plaintiff intended that his stay in South America should be continuous. There is no evidence in the case bearing upon the existence of such an intention except the chronology. If the only interruptions of actual physical presence in South America were brief holidays or visits to a surgeon that might have indicated that continuity of stay was intended. The same intention might be inferred from investment in a substantial year-round house in South America. There is, however, no such evidence.

The Government has failed to show continuity of stay for five years in foreign states. Plaintiff is therefore entitled to judgment declaring him to be a citizen of the United States.

On the trial plaintiff asked for judgment on two other grounds as an alternative to defeating the Government's claim of five-year residence. In view of my decision that the Government has not sustained its burden of proof on that claim there is no necessity for considering these two alternative grounds on which plaintiff seeks judgment. Nevertheless I think that I should make findings and conclusions with respect thereto for assistance to the appellate court if my decision that the Government has not sustained its burden of proof that the plaintiff has had continuous residence for five years in a foreign state or states should be reversed.

■ Plaintiff's first alternative ground is based upon section 353(4) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1485(4). That section provides:

"Section 352 Not Effective as to Certain Persons

"Section 353. Section 352(a) shall have no application to a national who—

*    *    *    *    *    *

"(4) had his residence abroad on October 14, 1940, and temporarily has his residence abroad, or who thereafter has gone or goes abroad and temporarily has his residence abroad, solely or principally to rep-

resent a bona fide American educational, scientific, philanthropic, commercial, financial, or business organization, having its principal office or place of business in the United States * * * for which he receives a substantial compensation".

Plaintiff claims that during the five years in question such residence as he had abroad was temporary and that he had such residence solely or principally to represent a financial organization having its principal office or place of business in the United States, known as Amsinck Sonne & Co., for which he received a substantial compensation.

Here the burden is upon plaintiff to bring himself within this exception to the statute providing for the denaturalization of someone who resides away from his adopted country for five years. To begin with, I recall no evidence that plaintiff's residence away from the United States was of a temporary character. It is undisputed that he kept 80% of his cash and securities in New York and he testified that he had never considered his absence to be permanent. On the other hand, he was instrumental in bringing members of his family from Germany to South America as refugees from the Nazis and he admits that if he gets a passport he expects to return to Argentina because they are there. I cannot find that he has established that his residence in Argentina is temporary.

Nor can I find that during the critical five years he had his residence abroad solely or principally to represent Amsinck Sonne & Co. for which he received a substantial compensation. Amsinck Sonne & Co. qualifies as a bona fide American financial organization having its principal place of business in the United States but plaintiff's residence abroad was not solely or even principally to represent that organization on a basis for which he was to receive a substantial compensation. During that period plaintiff was a director and vice president of an Argentine corporation known as Mapocho S. A. He has been a director from the foundation of the com-

pany in 1933 and during the years in question had a 40% interest in its stock. As late as December 20, 1952, plaintiff went to Buenos Aires to attend a directors' meeting of that company. Plaintiff offered no evidence from which the conclusion could be reached that his activities in the Argentine were principally on behalf of Amsinck Sonne & Co.. More important, he failed to establish that he received compensation for representing Amsinck Sonne & Co. He offered evidence of a business transaction in which he and Amsinck Sonne & Co. were involved but this took the form of plaintiff's obtaining for an Argentine exporter New York financing from Amsinck Sonne & Co. and himself. While the advance was nominally made solely by Amsinck Sonne & Co., one-half of it was made for the account of plaintiff and he and Amsinck Sonne & Co. divided the commission and interest paid by the South American exporter. Plaintiff received no commission from Amsinck Sonne & Co.

A representative of Amsinck Sonne & Co. admitted that plaintiff was not their agent and could say at most that he was an unofficial representative. It was admitted that plaintiff was not paid a salary and there was no evidence that he received any other compensation except as a participant in the business on a par with Amsinck Sonne & Co.

I thus find that plaintiff did not bring himself within section 353(4) of the Immigration and Nationality Act of 1952 by establishing that he had his residence abroad principally to represent a bona fide American financial organization for which he was to receive a substantial compensation.

Plaintiff's other alternative ground for judgment even though he had resided for five years in the foreign states of Argentina and Uruguay is based upon section 354(2) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1486(2).

That section reads:

"Section 352(a) (2) Not Applicable as to Certain Persons.

"Section 354. Section 352(a) (2) of this title shall have no application to a national—

\* \* \* \* \* \*

"(2) who has established to the satisfaction of the Secretary of State, as evidenced by possession of a valid unexpired United States passport or other valid document issued by the Secretary of State, that his residence is temporarily outside the United States for the purpose of (A) carrying on a commercial enterprise which in the opinion of the Secretary of State will directly and substantially benefit American trade or commerce".

Plaintiff left the United States on December 20, 1952 in possession of a valid United States passport that had been issued to him on January 17, 1951 by the Secretary of State. By its own terms it would expire on January 17, 1953. In February 1953 he made application to the United States Embassy in Buenos Aires for an extension. In November 1954, however, he received instead a certificate of loss of nationality.

It would be idle to say that plaintiff's possession of the valid unexpired United States passport on December 24, 1952, the date when the Immigration and Nationality Act of 1952 became effective, evidenced that it had been established to the satisfaction of the Secretary of State that his residence was temporarily outside of the United States for the purpose of carrying on a commercial enterprise which, in the opinion of the Secretary of State, would directly and substantially benefit American trade or commerce.

Even if this court can substitute itself for the Secretary of State, plaintiff has not entitled himself to a finding that on the effective date of the Immigration and Nationality Act of 1952 his residence was temporarily outside the United States for the purpose of carrying on a commercial enterprise which would directly and substantially benefit American trade or commerce. Aside from the fact that plaintiff has not established that his residence was temporary there is not suf-ficient evidence before me to warrant a finding that the benefits accruing to American trade and commerce would be substantial.

Finally, plaintiff makes the point that the provisions of law under which his certificate of loss of nationality was issued are unconstitutional as creating a second class of United States citizens. Since I have disposed of the case without the necessity of deciding the constitutional question I shall not discuss it.

The foregoing opinion is intended to embody findings of fact and conclusions of law. If others are desired requests may be made.

Settle judgment on notice.